Good morning. It may please the court, I'm Douglas Mahaffey representing the appellant. Could you help me on something that the word appellant triggers for me? Some of the words on the documents were a little confusing. Do you have a final judgment disposing of all claims in all parties? No, Your Honor, we do not believe we do. I was afraid of that. The Fourth District's remand has left this open. There's been a remediator issued. The Honorable Judge Sheila Fell actually . . . Well, I don't mean whether something in California is appealable in the California system. I mean whether the United States District Court has issued a judgment disposing of all claims in all parties. The United States District Court, I believe, has. I believe the District Court . . . two things happened. When there were two plaintiffs, both Tymothy MacLeod and then Joe McVeigh, and the three orders that we appealed dismissed that action in its entirety. Okay, that's what I needed reassurance on. Thanks. The other point I was making parlays into, I think, a substantive part of the argument that I'd like the court to consider. As Judge Carter pointed out in his ruling where he talked about the myriad of cases, this would be the ruling on denying the Rule 59 motion for reconsideration. That's the January 21st order? Yes. Okay. He makes the comments, this is not over, and he pointed out under his view at the time that Trinity had a myriad of cases, appeared to be almost vexatious in the number of cases. Well, what was not over was the Eastern District of New York bankruptcy case, and I wrote a letter to my co-counsel, opposing counsel, advising that we would be likely filing an emergency motion to stay these proceedings because in that case that just finalized in part on October 30th, Mr. Coper, who was an attorney working with Mr. MacLeod and Mr. McVeigh, we alleged in the Melissa's prosecution case, as the real party behind the scenes, conceded an entire judgment and consent judgment against him. Well, let's just stop right there. Have you given us a copy of this bankruptcy order that you're now talking about? I have not because I contacted my co-counsel and I have not. We provided it to them. The reason I have not is that after the bankruptcy court entered the findings of fraud on the court and fabrication of evidence with detailed findings of recorded conversations that were firm, proving the embezzlement, Mr. Coper then filed a Rule 60B motion to try to set aside his full consent. He was actually bored dired at trial. Well, let me just ask you. None of this is in front of us. None of this is in front of you. So don't go there. Okay. Unless you've got some kind of final order or judgment that would suggest that these proceedings should now be stated. You haven't filed a motion to that effect, right? I have not. This is all I contacted my co-counsel, told him we're going to be filing an emergency motion, did not file it before today simply because there is a final judgment, but the party just filed a Rule 60B motion about two weeks ago. We did some research and thought we should bring it to this panel's attention after that is ruled on. My only interest is do we have jurisdiction over this appeal? Well, you certainly do have jurisdiction. So I segued into that because I wanted to bring it up and let you know that's coming. What I think is relevant here that needs to be focused on is two key issues that we've briefed, and I think the Lee v. Hanley case came out and disposed of one of them, except for it raises the very issue that I think is pivotal to this Court's analysis. The Lee-Hanley case looked at Roger Cleveland and said, No, we're staying with the 1-year statute even for conversion. Roger Cleveland suggested malicious prosecution cases against the attorney should follow the tort statute. Roberts. Who's Roger Cleveland? The Roger Cleveland case that we briefed entirely in our, on our part. So you're agreeing that Lee v. Hanley, which disapproved Roger Cleveland, retains the 1-year statute of limitation as being applicable to malicious prosecution cases in California? Correct. So how do you meet that 1-year statute? We meet the 1-year statute because, well, two things happen underneath the, in the underlying action. One is that we were in the position of there was not a final judgment and dismissal doesn't trigger the commencement. That's the legal issue presented to this panel. There was no other decision in California in the Ninth Circuit that suggests that a dismissal in the anti-SLAPP posture, when there's still a full hearing on who is the prevailing party, determines predetermination of prevailing party that, in fact, you were the prevailing party. Well, if that's true, then you don't have a final termination and it's premature to have a malicious prosecution case, isn't it? You do not have a final determination and it's premature to have a malicious prosecution case in the anti-SLAPP posture until there's a reaching that there has been a prevailing party. Well, so then why wasn't it appropriately dismissed? Because we filed it within one year of the determination that we were the prevailing party. We couldn't have filed it when the dismissal. So which act, which judicial act are you saying is favorable termination on the merits? The ruling by the Superior Court Judge Fermat in this matter that we were the prevailing party. What date? That date was ultimately in his minute order and then confirmed in the judgment that was reversed non-proton because it had wording that was void. So you're saying the 7-25-12 minute order is the favorable termination on the merits? That's the favorable termination with the proviso, though. Well, if that's the favorite, then the statute has run and the district court was correct. Whether it was May or July, you still brought it more than a year later. So I guess I'm not understanding your argument. Well, procedurally, the argument has to be consistent with all the other minute orders that are issued across the State of California in State cases. When the minute order requires there to be a final order entered and directed, the minute order did say you're the prevailing party and then directed the prevailing party to prepare the final order, which we did, which the 4th District stated. Okay, but that order was vacated. So you're saying that the July 25, 2012 Judicial Act was the favorable termination on the merits, in which case the statute has run. So I'm not sure how you can argue that the district court erred in dismissing the case. Well, because I'm not doing an adequate job for my client to articulate the point, and I apologize. It is absolutely correct that the decision that we were the prevailing party was entered into that minute order, but that was not the final event of the case. It's never the final event of the case. Okay, so when did your cause of action accrue in your view? It accrued when the judgment was entered in August, less than a year before we filed the action. Okay, so that was vacated. It was vacated. So what do we do about the fact that that was vacated? You have to wait. That's the whole point of the segue in part because there's other moving pieces I brought up, but that moving piece is in front of you. We're in the dilemma that the church. Well, the August 6, 2012, entry of final judgment, or maybe that was 16, 2012, entry of final judgment was vacated. So that's not before us because that has no judicial effect. It was vacated. Right, but there has to be a follow-up judgment entered by the Fourth District, I mean by the superior court. And there wasn't. There hasn't been yet. So then you can't prove malicious prosecution because there is no favorable termination. You know, taking it just the exact opposite view, respectfully, is that we have still an open statute. We are in the position to where the superior court hasn't entered that judgment because it wasn't vacated with no instructions to reenter it. You have no claim, though. I'm more confused than I was before. No claim. Your argument against the limitations bar is that your claim isn't even ripe yet. The argument against the limitations bar is that the claim would not be ripe. But if it's not ripe, then why are we entertaining an appeal about it? Well, because you have a district court who disagreed and found that the act of dismissal versus the entry of the judgment is the starting date, and the panel should issue an opinion that says there is no precedent. We can affirm on any basis supported by the record. So if, in fact, the claim never arose because there was no final judgment, then it was appropriate to dismiss so that we would affirm the district court on a different basis. That could be an analysis that I think if the court went through that process, it would be affirmed on the basis that the dismissal was not the commencement date. The dismissal was not the date the one year commenced. As a matter of law, that's never been held, and that's not the law. It's when there's a judgment because there's not one now. This matter is not ripe, and the dismissal is affirmed. Obviously, we would then have the ability to then get that judgment entered, which we thought would be by now, by the superior court. Apparently they've not yet. We've checked the docket this morning. And when they enter it, then we have one year from that date. I think it's an important issue. Well, that's not for us to decide, but the question is here. You have no final adverse judgment on which to base a malicious prosecution case at this point in this action, correct? That's your claim, right? We have no final judgment complying with the court's minute order at this stage. That is correct. And without a final termination, then you have no foundation to make a malicious prosecution claim, correct? That is the analysis that I think is— So do you agree that the district court can be affirmed, although maybe not on the ground that was argued below, but that there is no predicate for a malicious prosecution case and therefore no claim? Stated slightly different, I agree. Okay. Well, how slightly different would you state it? I think academically this is an important decision. You're hopefully going to publish this. There is no precedent for commencing it with a dismissal. So I think you'd have to address that. We've briefed it. You'd have to make a decision on, say, that didn't commence it. However, what would commence it but didn't happen here yet, so therefore this isn't right, what would commence it is the final judgment following the superior court's order that you're the prevailing party. And because of the nuance that that judgment was vacated and deemed void, leaving all of us in this now gap, it's dismissed and affirmed but on the grounds that there's never been a final judgment. Okay. So you're looking for a ruling from us saying that the district court was wrong in saying that the minute order was either the voluntary dismissal or the minute order was a favorable termination on the merits for which your cause of action under California law accrued. Is that correct? That's correct. Okay. Because I can't change. That's all you're asking for at this point, if I'm understanding you correctly. I think in my position that's all I can ask for. Okay. Because at this point how do I? And do you have any authority for saying that when the court issued an order saying that Trinity was a prevailing party, et cetera, McVeigh dismissed the suit, that that is not, that under California law the cause of action doesn't accrue at that point? Yes. All of the cases that we cited for the proposition that there's no finality until the final judgment or final order, I think it's academic whether or not the order that follows the minute order is called an order or judgment. But this was an order to prepare an order. So the prevailing party determination was you are going to prevail and you are to enter, you are to prepare an order. The Supreme Court standard, as I understand it, is when the court has given its final word on the subject, that's sufficiently final. There's no, the requirement to have a piece of paper filed is not necessary. That's what I understand the Supreme Court standard to be. Not in the context. In California? No. In the context of an anti-slap finding when there's been deemed a prevailing party and a final order is issued to be prepared and then entered, because at that point it's a tentative. It's not the final minute order. The court has to review the wording of the final order, and this is a perfect illustration of when the final order is converted into a judgment that goes beyond the finding that is still not final. And so to say every time a minute order is issued, to basically say what you interpret California law, is that when a minute order is issued in this context in an anti-slap posture that orders a party to prepare a final order, which is subject to dispute, illustrated in fact here because there was a dispute on its wording, and it's voided, now leaving it back to the Superior Court to word the correct order to say, well, that was an academic exercise. The Fourth District should never even have looked at this final judgment because it's superfluous. Everything stopped when the minute order was issued. They should have found that as a matter of law and said, look, we don't care what anyone does after a minute order. They can word it however they want. Everything stopped when Judge Furman, in this case, issued his minute order ordering you to. So let me see what's going to happen here. The law of the case is that didn't happen. Stop just a second. I'm sorry. So what's going to happen in your view is that you want this order, you want a published opinion, but somewhere in the next few weeks or some indeterminate time, you're going to file an emergency motion to stay the proceedings here. Yes, Your Honor, and that's why I did not want this discussion to occur without that disclosure. I am not. All right. I think that you want to save maybe your remaining time for rebuttal. Thank you very much. Good morning. May it please the Court. My name is Theodore Frank on behalf of Appellee Timothy McLeod. I think the Court is understanding what's going on here, and I will just say as a general sense, this needs to be done. This is not an academic exercise. My client, Timothy McLeod, has left California. He doesn't practice law in California anymore because of this case. He's moved to Massachusetts. This needs to end for him. In terms of academics, this is reality for my client, and he needs it to end. Now, I'll address some of the issues that counsel mentioned. I think the Court is familiar with Judge Fermat's minute order. Counsel is arguing that that minute order has no effect. Well, a minute order from the Court certainly does have effect. It's a court order that has to be abided by. So under California law, does that start the statute? Did the cause of action for malicious prosecution suit accrue when the minute order was issued, or does it not accrue until a final judgment is entered? No. And, in fact, Your Honor, our position is that it accrued upon dismissal because, as we've briefed, the Court loses jurisdiction to make any judgment on the merits once the case is dismissed. The only jurisdiction the Court has is to make an attorney's fee order for ruling, and that's what it did. So they cite cases saying that under California law, under some courts, not the Coltrane but other cases, the Court would have to make an evaluation of the merits in order to award attorney's fees. Right, but that's only to determine the attorney's fees. It's not to determine whether one party prevailed on the merits. I didn't understand something you just said. Did you say the cause of action accrued on the voluntary dismissal? Yes, Your Honor. How can the cause of action accrue? One of the elements of the cause of action is a favorable termination on the merits, and a voluntary dismissal is not. Well, you're correct, Your Honor. Our ultimate position would be there was no favorable termination, so there simply is not. If you don't have a statute of limitations bar, what you have is failure to state a claim upon which relief can be granted. I think they still call it a demurrer in California. Yes, Your Honor. In some ways, you agree with him that the case should be dismissed because there's no final adverse judgment on the merits. Is that right? Certainly. Now that the Court of Appeal has vacated that void judgment that was entered. You heard the discussion that we had with the other counsel, and my question to him is do you agree that what should happen here is affirming the dismissal on the ground that there is no cause of action because you have no underlying unfavorable determination for malicious prosecution? And you agree with that? I do. That's a ground. What I would caution, though, Your Honor, as counsel has mentioned, there's no judgment in the state court. The state court is not going to enter a judgment on its own accord. A party would have to come in and say, hey, look, the court vacated the old judgment. We'd like a new judgment. So if the dismissal in the district court is affirmed on the ground that Your Honor is mentioning, I presume counsel is going to go run in to state court and submit a new judgment trying to get this all restarted again. How if the dismissal of the complaint, which isn't on the merits, how then would they have an underlying predicate for the malicious prosecution claim? Again, I don't think you can go in and get a judgment on the merits at this point. How can you get anything? The most usual voluntary dismissal is when parties have settled the case, they voluntarily dismiss. That ends the trial court's jurisdiction over the case, except for ancillary matters such as costs and attorney's fees. There is no case to adjudicate. You're correct. There really is no need for a judgment. Didn't the district court find that there was a favorable termination on the merits? Was that clearly erroneous? That's what the order mentions, Your Honor. I suppose the district court was looking at it from a step back. It would be the state court trial judge's determination of whether the dismissal was on the merits or not. You never get a judgment in a case that's voluntarily dismissed. You're absolutely right. All they have is the attorney's fees. They voluntarily dismiss the RSI action, then they come in and they voluntarily dismiss the McVeigh action. The only thing hanging then is an attorney fee order. Correct? Correct. Obviously, counsel has Rule 11 and other issues to consider on any refiling. From your client's standpoint, if the order is affirmed on the ground that there's no final judgment and there's no foundation for the malicious prosecution claim, how does that disadvantage your client in any way? Because my client is technically not a party to that state court action.  I understand. We may not even get notice when they come in, if they try to come in and put another judgment before the court. They'll get the judgment signed. It won't be served on us, but they may then use that judgment to file another malicious prosecution. What would be the . . . you mean to get another judgment on the attorney's fees? That's all they could get, but those fees have been paid. To have a judgment on that is sort of an idle act at this point. Let me go back to the district court ruling. The district court found that the voluntary dismissal of the McVeigh malicious prosecution suit on May 7, 2012 reflected the merits of the suit. So it was a favorable termination on the merits. And so your argument, if I'm understanding it right, is that it was not, that the voluntary dismissal was not a favorable termination on the merits. Is that correct? So we would have to find that the district court was wrong in that ruling in order to agree with you. Yes, you're correct, Your Honor. I'm curious about that word reflected. Sometimes you get a voluntary dismissal because after a deposition or some other significant event in a case, a party realizes they're likely to lose or they're likely to sink more money into the case than it's worth, and they agree to dismiss it. It reflects their view that there's a lack of merit in the case. And so in a way it reflects a favorable termination on the merits for the other side. But just because it reflects it doesn't mean it is one because the court has never made a favorable determination for one side or the other. The parties themselves have. I just don't understand how the voluntary dismissal can result in anything amounting to a foundation, an element of the malicious prosecution case. You're correct, Your Honor. You're correct. Well, there's some case law on point, right? Yeah, directly on point. So I think if I hear you right, your concern is that given the tenor of the litigation and its multi-headed facets in multiple courts, that your client is going to be still at risk no matter what happens, unless we were to say that the statute of limitations had run. Is that right? Certainly, Your Honor. There's also the ruling by the district court that there was no malice presented. I will take any ground that we'll get, and as many as the court will find, that would be great. That's always smart. We do want this to be done. As the court knows, this is going on. Is there Cal-App authority for looking through the voluntary determination and seeing it as a termination on the merits? No, none that I'm aware of, Your Honor. The court has to make that determination after the fact on its own, and that has never been done and will not be done at this point. So I'm looking at this Daniels case. A voluntary dismissal is presumed to be a favorable termination on the merits unless otherwise proved to a jury. So are you saying that that's not applicable here? I mean, I believe Mr. McVeigh had an affidavit saying, no, I just voluntarily dismissed on the grounds of I didn't scorched earth and I didn't strategic reasons, and not on the merits. But the district court didn't credit that, and there are cases saying the district court doesn't have to credit that sort of affidavit if there are other factors that indicate it was merits-based. So how would we say that the district court was wrong here regarding the reason for the voluntary dismissal? I believe that the case, maybe it's Coltrane, that says the reason it's deemed to be favorable is that the defendant's goal is to make the plaintiff go away with its tail between its legs, or words to that effect. Correct. That's the language in Coltrane. You're correct, Your Honor. I point to the record again of Mr. McVeigh. He wanted to pursue his claims in another action so he could get the benefit of the economics because he couldn't afford to pursue this on his own. I don't have a clear answer for you about the district court. The district court ruled that the dismissal was a favorable termination. I suppose that takes us then to the point, well, if that was a favorable termination at the dismissal, that's when the cause of action accrued, and it's time-barred by the statute of limitations, certainly. Okay. I suppose if the court has no more questions, I'll submit. All right. We'll give you a little time for rebuttal. Would you put a minute on the clock, please? Thank you. The district court went through the analysis, cited several cases as to how voluntary dismissals can be construed as a favorable termination on the merits, and thereby specifically said, quote, defendants' voluntary dismissal on May 7, 2012, reflected the merits or rather the lack thereof of the McVeigh action. It would be highly unusual for this court to reverse that finding. Counsel's suggestion that it's affirmative on the other grounds, which is the slap background, is another important issue that I think you should publish on. The suggestion by the district court is that even when you have a voluntary dismissal, which Justice Kleinfeld was questioning, how does that create a favorable termination, you can never be deemed to file a slapback action. How was the lawsuit dismissed pursuant to a slap motion? It was a voluntary dismissal. It's the same question, how do you receive attorney's fees when an anti-slap motion is pending and the party dismisses voluntarily? And the answer lies within the same statute. The California legislature has said this is to be extremely, construed extremely broad, very liberally, because the policies are on both sides. If you are going to run with your tail between your legs to use the Coltrane analysis right when the guillotine is falling, they say that's not going to. Do you need to go that far on the federal side as opposed to California slap law under the dismissal federal rule of civil procedure 41, as I recall? If the case is voluntarily dismissed before either an answer or a motion to dismiss is filed, there are no attorney's fees. And if it is filed after an answer or a motion is filed, there are attorney's fees, or in Alaska anyway, English rule states, and there are costs everywhere. Why wouldn't this just be analogous? The attorney's fees do not reflect the merits. They just reflect that one side has put the other side to a lot of trouble and expense in a case they did not pursue. I like that, Justice Kleinfeld. It's an excellent analysis. This circuit has made the point several times in other opinions that you have to construe the federal rules in harmony, even though the anti-slap statute is a California statute and the federal district judges do apply it. It has to be in harmony, and that's a good example. We don't have to go that far because under the federal rules, you'd never get your attorney's fees in this posture. So the district court fell into the argument or was requested to go into the argument that you follow the anti-slap versus the slap back statute and disregarded the federal district rules that under a voluntary dismissal, you don't get your attorney's fees. That would be a way to reverse the attorney's fees. You've already appealed this, though, right? Absolutely. The McVeigh action has been appealed. The attorney's fees have been paid. No, this is the underlying attorney's fees. These attorney's fees haven't been paid. There's $40,000. What I'm saying is had the McVeigh fees been paid? McVeigh fees have been paid. That's what he was referring to. That's what he was referring to. Yes, that's what I'm referring to because that action is over, right? I mean, well, yes or no. We do not agree that the action is over. I know counsel thinks they won't be served. Everything that's in that action in the Superior Court is going to go to Mr. McCloud. The District Court of Appeals has made it clear there are real parties and interests affected. It would be a violation of our professional rules of ethics for my firm not to include them. But as we discussed in the opening argument, and I know my time is up, we do not agree that it's over. It's in the limbo land. You can't use the minute order. That's not what the law says. You use the judgment. I was addressing the underlying fees the District Court awarded here. I understand. On that issue. But on the other one, it is this dilemma. I think it's an important issue for the bar to sort this out because the California and federal system clash, and we have this nuance, and it's created an interesting problem from both sides. Mr. McCloud wants it over. We want it over worse than he wants it over, but he's seeking attorney's fees, and we, of course, now have a new development in New York that I can't control. All right. Thank you. Thank you. Thank you both for your argument this morning. The case just argued is submitted.
judges: Kleinfeld, McKeown, Ikuta